## Anderson's Administrator v. Greenville Coal Company.

(Decided October 17, 1924.)

### Appeal from Muhlenberg Circuit Court.

1. Pleading—Unnecessary Allegation in Petition, in Avoidance of Possible Defense, is Mere Surplusage.—Unnecessary allegation in petition, which is in fact only avoidance of defense which may or may not be relied on, is only surplusage, adds nothing to petition, and does not detract from it.

2. Pleading—Answer Not Demurrable Because Setting up Defense Anticipated by Petition.—In action for death of employee in mine, answer relying on violation of rule put into force pursuant to Ky. Stats., section 2738b, as a defense was not demurrable, because petition, in anticipation of such defense, alleged affirmatively that it was custom for employees to violate such rule.

3. Trial—Instructions as to Violation and Abrogation of Rules Held Inconsistent and Not Fairly to Submit Issue.—Where miner, when injured, was where he had no right to be under employer's rules, and the issue was that of abrogation of the rule by habitual violation, instruction which. without referring to rule, told jury to find for plaintiff if it was usage and custom for miners to wait at such place, and custom was known to employer, and another instruction to find for defendant if miner was where he had no right to be, were inconsistent and contradictory, and did not properly submit issue.

4. Master and Servant—Whether Rule was Abrogated Depended on Habitual Violation with Knowledge of Employer.—Whether rule of master, adopted and approved, was in force at time of accident, depended on whether there had been such habitual violation of it, with knowledge of employer and its officials, as brought about its abrogation.

5. Master and Servant—Rule Approved by Mine Inspector May be Abrogated by Customary Violation.—Rule of employer, adopted, printed, posted, and approved by chief mine inspector, in pursuance of Ky. Stats., section 2738b-1, may be abrogated by customary violation.

6. Constitutional Law—Master and Servant—Statute Giving Mine Inspector Authority to Approve Rules Held Unauthorized Attempt to Delegate Legislative Power.—Ky. Stats., section 2738b-1, giving chief mine inspector authority to approve rules adopted by mine owners, and thus give them force of statutes, and making their violation a misdemeanor, is attempt to delegate power of General Assembly, in violation of Constitution, section 60.

T. O. JONES and W. O. SMITH for appellant.

T. J. SPARKS, E. A. TAYLOR and EAVES & SANDIDGE for appellee.

OPINION OF THE COURT BY TURNER, COMMISSIONER— Reversing.

Appellant's intestate was a coal loader in appellee's mine. He was directed to change his working place from a room in one-part of the mine to a room in another part, and in doing so it became necessary for his tools to be removed. The tools were heavy, and it was the custom in the mine, under such circumstances, to notify the driver of one of the coal cars and have him to deliver the tools at or near the new working place. Decedent notified one of the drivers to so remove his tools, and then himself went to the new working place. After waiting there a short time he left the room and went into the lieway near a breakthrough where he expected the tools to be delivered by the driver, and while he was there a mule working

in the mine, but at the time unattended and not attached to any car, came through or into the lieway and there kicked decedent, resulting in his death.

In this action for damages by his administrator a trial resulted in a verdict for defendant, and the plaintiff has appealed.

The petition alleges that the mule which kicked and killed decedent was irritable, vicious and dangerous, and that defendant negligently directed and permitted the mule to be used in its mine, and permitted it to go upon the lieways and through the breakthroughs unattended. The petition also affirmatively alleges that when decedent received the injury he was in a breakthrough upon a lieway, and passing through the mine upon the entries, breakthroughs and lieways generally used by coal loaders and other employes in going to and from their work places, and that it was the established custom in the mine for the employes to use such entries, breakthroughs and lieways for that purpose, which custom was known to the defendant and its servants and agents. The petition also affirmatively alleges that although defendant is authorized to accept the provisions of the compensation law adopted in this state, it has not done so, and is not operating under the provisions of that law.

The answer denies the material allegations of the petition, including the alleged established custom, or that such alleged custom was known to defendant or its officers or agents. The answer then alleges in a separate paragraph that decedent received his injury solely as the result of his own wilful and wrongful misconduct and disregard of duty, and in still another paragraph pleads contributory negligence.

Before reply to this answer, defendant filed an amended answer wherein it alleged in substance that decedent had come to his death solely because of his own violation of the special rules and regulations governing employes, which rules and regulations were duly adopted and put in force and effect, pursuant to section 2738b, Kentucky Statutes, and that the rules and regulations had been duly approved by the chief inspector of mines, printed and posted as required by statute, and were in full force and effect at and before the time of the injury complained of.

The reply put in issue the affirmative allegations of the original and amended answer, and in a separate paragraph alleged that when decedent received his injury he

was following the habitual custom of employes in that mine, and that the rule relied upon in the amendment had been habitually violated for a long time prior to the injury, and the defendant, its agents and servants in charge of the mine, and superior in authority to decedent, knew of such custom and habitual violation by decedent and other employes.

The rule relied upon by defendant is as follows:

"All employes are warned that for their own safety they must stay in their respective working places in the mines, except in case of danger to themselves or of accident or distress of fellow-workmen, until their day's work is finished. When their day's work is finished they must not loiter upon the entries, lieways or shaft bottom, but upon leaving their working places come direct to place of refuge near the bottom, line up and there wait their regular turn to go out."

It is first said for appellant that the court erred in not sustaining a demurrer to the amended answer relying upon the rules; and the reason for this contention is that because plaintiff in his petition anticipating that defendant might rely upon such a rule alleged affirmatively that it was the custom in the mines for the employes to use the entries, breakthroughs and lieways while waiting for their tools to be brought to them by the drivers. In effect appellant's contention is that by making this affirmative allegation in avoidance of an anticipated defense the defendant may be deprived of that defense. Clearly this is error, for it is apparent that an unnecessary allegation in a petition which is in fact only an avoidance of a defense, which may or may not be relied upon, is only surplusage in that pleading. It adds nothing to the petition, nor does it detract anything from it. A plea in avoidance of a defense naturally and logically should be made in a reply, and it was wholly unnecessary to encumber the petition with this matter in avoidance.

Manifestly, however, there was error in the instructions. In the first instruction, after setting forth the duty of defendant to furnish decedent a reasonably safe place in which to perform his work, and a reasonably safe means of ingress and egress to and from the place of work, the jury was authorized to return a verdict for the plaintiff if the usage and custom in the mine was for a coal loader therein to await in the breakthroughs for a

driver to deliver their tools being removed from one working place to another, and that such custom was known to defendant and its officers and agents in charge of the mine, and superior in authority to decedent, and permitted such employes so to do, if they further believed in pursuance of such custom decedent was awaiting in the lieways and breakthroughs the return of such driver, and if they further believe that defendant permitted a vicious, dangerous and irritable mule to be used in the mine, and to go unattended therein with knowledge of the dangerous nature of the mule.

It will be observed that in the first instruction there is no reference whatsoever to any rule of the company, and the right of recovery is based wholly upon a custom in the mine without reference to whether that custom shall have the effect to abrogate any rule.

Then in the second instruction, without any reference whatsoever to the abrogation of a rule by custom, the jury is peremptorily told that if they believed from the evidence that decedent came to his death as a result of the kick from the mule,

> "and that said mule was wild, vicious and was known to be by the defendant, yet if they shall further believe from the evidence that at the time said decedent received his said injuries, if any, which caused his death, he, the said decedent, Owen Anderson, was at a place in defendant's mine where he did not have the right to be under the defendant's rules, they will find for the defendant."

Clearly the authority to find for the plaintiff under the state of fact set forth in the first instruction, which is not qualified therein by any reference whatsoever to a rule to the contrary, is inconsistent with the peremptory direction in the second instruction to find for the defendant if there was such a rule.

That there had been such a rule was undenied in the evidence, as was the fact that it had been printed, approved by the chief mine inspector and had been posted in the mine as required by law; but whether that rule was at the time of decedent's injury in force was dependent upon whether it had been abrogated by custom, and on that issue the evidence was contradictory. Whether the rule was in force at the time of the accident depended upon whether there had been such habitual violation of it with the knowledge of defendant and its officials as

brought about its abrogation. That was the chief issue in the case.

We have, therefore, no difficulty in holding that not only are the two instructions wholly inconsistent and contradictory, one of the other, but they do not, when read together, properly submit the issue under consideration.

The second instruction should have told the jury in effect that under the rules of the company in evidence decedent was at the time of his injury at a place where he had no right to be, and that they should find for the defendant unless they believed the rule in question had been abrogated, or had become null and void by reason of its habitual violation in the manner set forth in the first instruction.

The rule was itself a complete defense to the action if it was in force, and whether it was in force depended upon whether or not it had been so habitually violated as that in effect it was destroyed. It is apparent this idea was in no sense submitted to the jury.

But it is said for appellee that a valid rule, properly adopted, printed, posted and approved in writing by the chief mine inspector of this state in accordance with and pursuant to the act of the General Assembly of 1914 regulating the operation of coal mines, must be given the same effect as a statute, and that as a custom can not abrogate a statute it cannot have the effect to abrogate such a rule.

The statute in question (2738b-1) provides that the operator of any coal mine shall have the right to adopt special rules for the government and operation of his mine not in conflict with the provisions of the act, but that before such rules shall be in effect they shall be approved in writing by the chief mine inspector, and when so adopted and approved and posted as required, all employes shall be deemed to have notice thereof and to have agreed to their provisions, and it is made a misdemeanor to violate any such rules, and a penalty therefor is prescribed.

The General Assembly itself prescribes no rules, but merely authorizes the individual mine operator to formulate rules for the conduct of the business of that particular mine, and such rules when approved in writing by the chief mine inspector for the first time become effective. That is to say, the mine inspector is by his act to put into effect, not the provisions of the act of the Gen-

eral Assembly, but the rules formulated by an individual affecting the operation of his own business.

The only question we deem necessary to consider is whether or not this attempted delegation of power by the General Assembly to a mine inspector to put into effect rules and regulations formulated by any other authority than that of the General Assembly itself is in conflict with the provisions of section 60 of our state Constitution.

That section among other things provides:

> "No law, except such as relates to the sale, loan or gift of vinous, spirituous or malt liquors, bridges, turnpikes, or other public roads, public buildings or improvements, fencing, running at large of stock, matters pertaining to common schools, paupers, and the regulation by counties, cities, towns or other municipalities of their local affairs, shall be enacted to take effect upon the approval of any other authority than the General Assembly, unless otherwise expressly provided in this Constitution."

We are relieved from the necessity of any extended consideration of the question whether the act is an attempt to make the rules and regulations effective upon approval by some other authority than the General Assembly, by a recent opinion of this court considering a strikingly similar question.

In Commonwealth v. Beaver Dam Coal Co., 194 Ky. 34, appellee was indicted for failing to provide wash rooms for its employes at its mines in accordance with the provisions of a legislative act. That act provided that the owner or operator of a coal mine working thirty persons or more, should provide and maintain suitable and sanitary wash rooms,

> "after 30 per cent or more of said employes decide by a vote of the men affected to ask and notify the employer to erect such wash room for the use of such employees."

The court, after quoting the act and section 60 of the Constitution above quoted, said:

> "It is therefore clear that the enactment of this act is prohibited by this section of the Constitution if, as contended by appellee, it is to take effect, not

as a direct and necessary result of legislative action, but rather only upon some other than legislative authority.''

And then later in the opinion it was pointed out that although the enactment was passed by the General Assembly, approved by the Governor, and published with the formalities of a law:

"Very clearly provides by its unambiguous terms that it shall be of no force or effect whatever, even though all the conditions upon which it could operate may exist, until and unless another tribunal than the legislature shall have decided by vote that its provisions shall become effective.''

The act in question here, after giving to the mine operator the right to adopt special rules for the government and operation of his mine, expressly provides:

"But before said rules shall be in effect they shall be approved in writing by the chief inspector of mines.''

So that in this act the General Assembly has not only attempted to delegate to an individual the power to make special rules which the General Assembly itself might have made, but it specifically provides that such special rules shall become effective only upon their approval in writing by another. Waiving, therefore, for the purposes of this opinion the question whether the General Assembly might delegate its power to an individual to make such rules and regulations, manifestly it cannot under the provisions of section 60 of the Constitution make their life and vitality depend upon the affirmative act of another.

Even before this enactment coal operators had the right to adopt and put in force reasonable rules for the operation of their business; when notice was given of such rules they were part of the contract between the employer and employe, and the rules when approved by the mine inspector have no different or greater force as effecting their abrogation by custom.

Having this view it is apparent that the rules, even though adopted in the manner prescribed, may be abrogated by their habitual nonobservance by employes with the knowledge or acquiescence of the employer.

Because of the error in the instructions the judgment is reversed with directions to grant appellant a new trial and for further proceedings consistent herewith.