8 So.2d 189

**CRANE CO. v. DAVIES.**

6 Div. 706.

Court of Appeals of Alabama.

Oct. 7, 1941.

Rehearing Denied Jan. 13, 1942.

Reversed and Remanded May 12, 1942.

Sadler & Sadler, of Birmingham, for appellant.

474

J. P. Mudd, of Birmingham, for appellee.

SIMPSON, Judge.

This was an action in tort against the defendant (appellant) for damages to the household goods and to the leasehold interest of the plaintiff (in the house) by reason of a boiler explosion in the heating system of his dwelling house. The plaintiff rented the house from his father.

The wrong complained of was that the heating equipment, furnace, boiler and supplies manufactured and furnished by defendant for the heating system were imminently or inherently dangerous when put to the use intended, which dangerous condition was known to defendant and not made known, but was unknown to the plaintiff or to Mr. Davies, Sr., owner of the house. From a judgment for the plaintiff in the circuit court, this appeal is taken.

Oral arguments of respective counsel upon original submission, and their written briefs and arguments here, ably presented to this court the issues involved and the contentions of the parties.

Appellant urges that a reversal be declared because of the refusal by the trial court of certain special written charges, including the general affirmative charge, and for allowing the expert testimony of Mr. Davies, Sr.

We will endeavor to set out the pertinent evidence upon which the plaintiff seeks to rest his recovery.

Before making certain contemplated alterations to the house which was to be remodeled, Mr. Davies, Sr., consulted a representative of Crane Company, who had called upon him, as to the size and character of heating plant suitable for the building. This representative assured him that defendant had just the suitable equipment for establishing in the house a proper heating system. After taking the contemplated plans for the remodeled house for the purpose of laying out designs for a complete heating system therein, the defendant prepared blue prints and plans for such plant, showing the piping layout, sizes, connection, etc., of same, the boiler to be used and other instructions as to the installation of the system and delivered them to Mr. Davies, Sr. An estimate of the cost of the material was also given him. It was understood that the boiler and radiators should be billed through a friendly plumber, the company suggesting a Mr. Mandy as such plumber. The pipes and fittings were purchased from defendant through Virginia Bridge Company, of which Mr. Davies, Sr., was branch manager.

The house was remodeled and the heating system installed therein substantially according to plan, Mr. Davies, Sr., doing the carpenter work and installing the pipes and Mr. Mandy installing the boiler, valves and radiators. The heating plant was known as a closed hot water system, circulation therein being controlled by a "booster pump" actuated automatically by room temperature.

On December 14th the work was completed. The weather became cold, so that night, after checking the gauges and observing that the system was apparently in satisfactory working order and ascertaining that Mandy's men had already had a fire burning in the furnace, Mr. Davies, Sr., replenished the fire with a small amount of coke (about 20% of furnace capacity) to prevent freezing of the system during the night. Later that night the boiler exploded, resulting in considerable damage to the house and its furnishings. The house was enveloped in steam, heard to escape at the time of the explosion. The break was in the rear of the boiler where the water line from the house reentered it.

■ Mr. Davies, Sr., is an engineer of extensive experience, having received his civil and mechanical education in engineering at well known universities of the country about thirty years' previously. Since then he has been engaged in his profession and for many years with his present employer, which engages in structural work of all kinds. He has had experience in the supervision and operation of steam boilers and as an incident to his structural work has had some experience in heating plants. He has had special training in carpentry and joinery. We think and hold that his qualifications sufficiently appear to allow expert testimony as to the cause of the explosion. Walker v. Stephens, 221 Ala. 18, 127 So. 668; W. T. Adams Machine Co. v. Turner, 162 Ala. 351, 50 So. 308, 136 Am. St. Rep. 28; Alabama Consol. Coal & Iron Co. v. Heald, 168 Ala. 626, 53 So. 162; Caldwell-Watson Foundry & Machine Co. v. Watson, 183 Ala. 326, 62 So. 859.

The testimony of Mr. Davies, Sr., and that of his expert witness, Boisclair, was that the system, with the boiler, as designed by the defendant, was inherently or intrinsically dangerous in that there was no reverse acting aquastat or other safety

device to maintain proper circulation of the water through the system. The tendency of this evidence further established that the booster pump being actuated only by room temperature, the water could not circulate by reason of thermal differences; that the heat generated was concentrated upon the water in the boiler which gradually reduced its level below the crown sheet, thus creating in the boiler steam at high pressure which held the water from the boiler until the room temperature should become low enough to actuate the booster pump. Then when this lower temperature was reached the booster pump automatically started forcing cold water into the overheated boiler, whereupon it flashed into steam, the ratio of expansion being about 1700 to 1. As a result the casting of the boiler cracked, hence the explosion.

Evidence for the defendant sought to establish that the cause of the explosion was in doubt, although no contrary theory was advanced except that there was some minor deviation from the piping plan in the piping installation; that this boiler was similar to others now in satisfactory use, no other such explosions having been recorded; that the plans for the system had been furnished gratuitously, the articles making up the system having been manufactured free of defect and marketed in sections only; further that Mr. Davies, Sr., sought to operate the system before Mr. Mandy had completed his inspection.

According to Mr. Davies, Sr., Mandy stated the morning following the explosion that he had, the previous afternoon, checked the operation of the system and found it functioning properly, that "he had completed his inspection and found the system to be in satisfactory operating condition."

■ The reasonable inference is that the plans and specifications of the heating system and boiler prepared and recommended by the defendant were a part of the single purpose to sell Mr. Davies the system for his house. But whether offered gratuitously or for the purpose of making the sale is of little consequence. As we understand the law, the negligent designing of the system is actionable if damages ensue as a proximate result thereof whether furnished gratis or not. Jaeger v. Elizabethtown Consol. Gas Co., 124 N.J.L. 420, 11 A.2d 746.

■ It is also immaterial that the defendant, being a wholesaler, would not sell direct but insisted upon a billing through a "friendly plumber". The defendant, according to evidence of the plaintiff, designed and sold an improper and dangerous heating system to be installed in the Davies house. So, whether the friendly plumber scheme were a circumlocution inspired by policy or whether genuine, the rule of liability is the same.

■ The general rule of non-liability of the manufacturer or vendor to third persons not in privity of contract for negligence in the construction, manufacture or sale of the articles handled is subject to well recognized exceptions, one of which is that one who sells or delivers an article which he knows, or from the facts should know, to be imminently dangerous to life or limb of another who is possessed of no such knowledge or notice of its qualities, is liable to any person who suffers an injury therefrom which might have been reasonably anticipated, whether any contractual relation existed between the parties or not. Huset v. J. I. Case Threshing Machine Co., 8 Cir., 120 F. 865, 61 L.R.A. 303; Sterchi Bros. v. Castleberry, 236 Ala. 349, 182 So. 474; Altorfer Bros. v. Green, 236 Ala. 427, 183 So. 415; Miles v. Chrysler Corp., 238 Ala. 359, 191 So. 245. See also Crane Company v. Sears, 168 Okl. 603, 35 P.2d 916; Grinnell v. Carbide, etc., Corp., 282 Mich. 509, 276 N.W. 535; McLeod v. Linde Air Products Co., 318 Mo. 397, 1 S.W.2d 122; Kentucky Independent Oil Co. v. Schnitzlerk, 208 Ky. 507, 271 S.W. 570, 39 A.L.R. 979.

■ The law is further declared that a manufacturer of an article, under a plan or design which makes it dangerous for the use intended, is subject to liability to others reasonably expected to use it lawfully or to be in the vicinity of its probable use for injuries proximately resulting from the manufacturer's failure to exercise reasonable care in the adoption of a safe plan or design. This, of course, provided the danger is not known to the user and there is no contributory fault on his part in its attempted use. Restatement of the Law of Torts, § 398, pp. 1084-1085.

We are mindful of the able argument of learned counsel for appellant—and the law —that negligence cannot be assumed from the mere fact of injury and that facts cannot be sustained by building inference upon inference.

■ Nevertheless, as so well set forth by Mr. Justice Gardner (now Chief Justice) of our Supreme Court in Georgia Power Company v. Edmunds, 233 Ala. 273, 275, 171 So. 256, 258, "a nice discrimination must be exercised in the application of this principle. As a theory of causation, a conjecture is simply an explanation consistent with known facts or conditions, but not deducible from them as a reasonable inference. There may be two or more plausible explanations as to how an event happened or what produced it; yet, if the evidence is without selective application to any one of them, they remain conjectures only. On the other hand, if there is evidence which points to any one theory of causation, indicating a logical sequence of cause and effect, then there is a juridical basis for such a determination, notwithstanding the existence of other plausible theories with or without support in the evidence." See, also, Southern R. Co. v. Dickson, 211 Ala. 481, 100 So. 665; Harbin v. Moore, 234 Ala. 266, 175 So. 264; Alabama Power Co. v. Gladden, 29 Ala.App. 438, 197 So. 374.

■ This court thinks that the evidence adduced for the plaintiff did point to a theory of causation indicating a logical sequence of cause and effect, which made it necessary for the trial court to refer the issue to the jury. The evidence and the tendencies thereof clearly presented a conflict, so the affirmative charge was properly refused. Sterchi Bros. case, supra, 236 Ala. page 350, 182 So. 474.

■ If conceded to be meritorious under the evidence, the contention of non-liability because the system was operated before proper tests were made is answered by proof that Mr. Davies, Sr., tested and found it in apparent working order, and furthermore by the proved admission of the plumber, Mr. Mandy, who installed it, that he had completed his tests and found the system to be in proper operating condition.

■ The insistence that there was a variance between the evidence and the negligence claimed in the complaint is also untenable. In our view, the complaint sufficiently alleges the actionable wrong. Certainly, under the evidence and the able charge of the court, there can be no reversible error. The issue was clearly defined even though the complaint described the article furnished as "boiler, heating equipment and supplies" rather than as "a heating system". The issue, under the evidence, was clearly presented to the jury by the instructions of the court and no prejudicial error is made to appear. Best Park & Amusement Co. v. Rollins, 192 Ala. 534, 68 So. 417, Ann.Cas.1917D, 929.

■ Furthermore, as a predicate for a reversal on the ground of such a variance, the same being curable by amendment, there must have been a special objection making the point as to the variance. Request for the general affirmative charge is not enough. No such special objection having been made, the point is waived. Circuit Court Practice, Rule 34, Title 7, Code 1940, p. 1035; Schaeffer v. Walker, 241 Ala. 530, 3 So.2d 405.

The special written charges asserting non-liability if the system was operated before Mr. Mandy "turned over" or "delivered" the system to Mr. Davies, Sr., in addition to being argumentative and asserting an incorrect statement of the law as applied to the proven facts, assume certain facts not presented by the evidence.

Our observations hereinabove dispose of the assignments of error cogently argued by able counsel for appellant.

Our further conclusion is that the issues were clearly and correctly presented to the jury by the able charge of the trial court and that the judgment below should not be disturbed.

No prejudicial error appearing, the judgment is accordingly affirmed.

Affirmed.

## On Rehearing.

SIMPSON, Judge.

Able counsel for appellant, on rehearing, asseverate with some acerbity that we have misapplied the law to the evidence in the case. In deference to their cogent argument, we will further delineate our views. It would, of course, be purposeless to include herein a copy of the pleading, same being a part of the record.

To us the plain interpretation of the evidence is that one of the controlling phases of the transaction, certainly a part thereof, was the recommending and furnishing of the plan by Crane Company as depicting a suitable heating plant for the house. The furnace and other equipment were purchased for the purpose of installing therein a heating plant in accordance with said plan. The preparation and

delivery of the plan by the defendant can be construed, and we do, as but part and parcel of the business of selling the boiler, heating equipment, and supplies for the house.

Being so, if the boiler without a proper safety device, as installed in the heating plant designed by Crane Company, was an inherently or imminently dangerous instrument when put to its intended use (and this fact is supported under the plaintiff's evidence), its dangerous character or quality being unknown by and not made known to the plaintiff, there would be liability for injuries which may reasonably be contemplated as likely to result therefrom to him, or to any person, not himself at fault.

Of such import are the authorities hereinabove cited, to-wit: Huset v. J. I. Case Threshing Machine Co., 8 Cir., 120 F. 865, 61 L.R.A. 303; Sterchi Bros. Stores v. Castleberry, 236 Ala. 349, 182 So. 474; Altorfer Bros. v. Green, 236 Ala. 427, 183 So. 415; Miles v. Chrysler Corp., 238 Ala. 359, 191 So. 245. See also Crane Co. v. Sears, 168 Okl. 603, 35 P.2d 916; Grinnell v. Carbide, etc., Corp., 282 Mich. 509, 276 N.W. 535; McLeod v. Linde Air Products Co., 318 Mo. 397, 1 S.W.2d 122; Kentucky Independent Oil Co. v. Schnitzler, 208 Ky. 507, 271 S.W. 570, 39 A.L.R. 979; Restatement of the Law of Torts, Section 398, pp. 1084–1085.

We therefore cannot accede to the view of appellant that the piping and heating plan furnished by the defendant for use in the house plays no part in the consideration of the case and that because forsooth the boiler, equipment, and supplies were sold by defendant as unassembled articles, the rule of liability, hereinabove, does not apply. Nor do we perceive that liability is affected by the fact that the articles were "billed through a friendly plumber," (Mandy).

This rule of liability is referred to by appellant as the "doctrine of manufacturer's liability." It is so termed in decisions of the courts, but liability under the law is not restricted solely to manufacturers, but extends to vendors and suppliers, generally, of imminently dangerous instruments when furnished or supplied under the circumstances treated hereinabove.

If such doctrine is to have a reasonable application in our modern industrial age, logic and common sense dictate that it should be applicable to any instrument inherently dangerous or becoming so when applied to its intended use in the usual and customary manner, (44 C.J. 888), when furnished or supplied by the manufacturer or vendor who in the circumstances should know of its intrinsically dangerous qualities to a user not at fault, who is not so apprised. If so, it seems to us not an unreasonable application of the principle to hold that if the boiler and equipment, when used in the heating plant as designed, were such an instrumentality and were supplied and used under such circumstances, there would be consequent liability for injury proximately resulting therefrom, providing there was no fault on the part of the user (plaintiff) proximately contributing to such injury. If this be a proper application of the principle, and to us it seems undoubtedly so, it is as equally certain that the evidence adduced pending trial was sufficient to require submission of the issue to the jury, as was done by the learned trial court. We therefore maintain our original view that defendant was not due the general affirmative charge.

The special charges of defendant claiming exoneration from liability if the boiler, etc., were used before being "turned over" or "delivered" to Davies, Sr., and before final tests by Mandy had been made, are again urged upon the court as stating correct legal propositions.

But we think the charges are faulty in several respects:

(1) The rule of concurring negligence which recognizes the liability of joint tort feasors to third persons not at fault is overlooked: The underlying principle of law is well understood. "Negligence, to render a person liable, need not be the sole cause of an injury. It is sufficient that his negligence, concurring with one or more efficient causes, other than plaintiff's fault, is the proximate cause of the injury." 45 Corpus Juris 920, Section 485 E. Alabama Great So. R. Co. v. Moundville Motor Co., 241 Ala. 633, 4 So.2d 305, 306; 15 Ala.Dig., Negligence, ☞60, 61, 90. Davies, Sr., is not the plaintiff. A third party brings the action. The charges ignore the fact that the plaintiff is a stranger to the transaction and in no way at fault in the damage to his property. They seek to acquit the defendant of liability if the injury resulted from Davies, Sr's., premature use of the system, even though by reason of an error in design, known to defendant, the boiler

may have been intrinsically dangerous when used as contemplated and as a proximate result thereof (concurring with the alleged negligence of Davies, Sr.) the damages were inflicted. The defendant was liable whether the alleged defective boiler was the sole proximate cause or was a concurring proximate cause with the claimed misuse or premature use of the system by Davies, Sr.

The effect of the charges was to mislead the jury to believe that if Davies, Sr., prematurely fired the system, there was no liability, regardless of whether or not the boiler as designed was imminently dangerous and concurred with the other averred negligence (that of Davies, Sr.) in proximately causing the plaintiff's damages.

(2) The charges are otherwise defective, we think, such as assuming that there had to be an actual "turning over" or "delivery" of the system to Davies, Sr., by Mandy and that Mandy (not some other competent person) must have been the one to have made the final test. The criterion is whether the instrumentality was intrinsically dangerous, was supplied under circumstances rendering the supplier liable, and whether the plaintiff's damages proximately resulted from this intrinsically dangerous, defective instrument—and this regardless of whether or not there had been an actual turning over or delivery of the system to Davies, Sr., and also irrespective of whether the final tests had been made by Mandy or some other competent person.

The two charges impress us as stating incorrect propositions of law, their refusal being justified.

This court adheres to the opinion that the judgment should be affirmed.

Opinion extended.

Rehearing denied.

### After Remandment.

PER CURIAM.

Respectfully according full weight and authority to the decision of our Supreme Court, it is deemed proper to reassert that our opinion was, and is, that if the boiler without a proper safety device, as installed in the heating plant designed and furnished by Crane Company, was an inherently or imminently dangerous instrument when put to its intended use, its dangerous character or quality being known to defendant and unknown by and not made known to the plaintiff, there would be liability for injuries which may reasonably be contemplated as likely to result therefrom to him, or to any person, not himself at fault.

The Supreme Court pretermitted discussion of this underlying proposition, resting reversal upon the conclusion that "the evidence did not sustain the material averments of the complaint," thereby entitling the defendant to the general affirmative charge. This holding is conclusive with this court (Code 1940, Title 13, Sec. 95), so upon this stated ground the judgment of the trial court is reversed and the cause remanded.

Reversed and remanded.