SPENCE v. THREE RIVERS BUILDERS & MASONRY
SUPPLY, INC.

1. Appeal and Error—Nonjury Case—Findings of Trial Court—
Evidence.

Findings of trial court in nonjury case that a certain individual
was not the agent or employee of plaintiff in purchasing de-
fective cinder blocks used in constructing walls of lake cottage,
and that the defects in the blocks constituted a breach of an
implied warranty as to their fitness for the purposes sold and
used, being supported by competent evidence, and that no
express warranty had been made by defendant to plaintiff
are binding upon the Supreme Court, where testimony does not
preponderate the other way (CL 1948, § 440.15).

2. Sales—Cinder Blocks—Appearance—Merchantable Quality
and Fitness.

Appearance, as well as structural safety and durability, is an
important factor in determining the merchantable quality and
fitness of cinder blocks used for walls of a lake cottage (CL
1948, § 440.15).

3. Same—Action Against Manufacturer—Contracts—Torts.

The basically contractual notion of privity involved in an action
against the manufacturer for breach of warranty as to a
product sold in the course of trade has largely to do with the
right of a party to bring his action against the party he seeks
to hold, regardless of the injury suffered, while the tort idea of
care or the lack of it has nothing whatever to do with the right
to bring the action but may affect recovery (CL 1948, § 440.15).

References for Points in Headnotes

[1] 3 Am Jur, Appeal and Error §§ 897, 900.
[3] 12 Am Jur, Contracts § 273.
[3, 8] 52 Am Jur, Torts § 96.
[5] 46 Am Jur, Sales § 711 et seq.
[7] 46 Am Jur, Sales § 723 et seq.

4. Same—Care in Manufacture of Goods.

   There is only one degree of care in the law of sales, that is, the standard of care which may reasonably be required or expected under all the circumstances of a given situation, whether arising in the manufacture of food or building materials (CL 1948, § 440.15).

5. Same—Breach of Implied Warranty—Negligence—Pleading.

   An action for breach of an implied warranty by a manufacturer of a product is, in the last analysis, bottomed on negligence and should be so pleaded by a plaintiff.

6. Courts—Rule of Law—Precedents.

   A rule of law that was laid down in former times is without proper foundation for present application, where the grounds upon which it was laid down have vanished.

7. Sales—Breach of Implied Warranty—Personal Injuries— Property Damage—Lack of Privity.

   A person who has suffered either personal injury or property damage by reason of a breach of a manufacturer's implied warranty in the negligent manufacture of its product may recover, notwithstanding there happened to be a lack of any privity of contract between the manufacturer and the injured person.

8. Same—Breach of Implied Warranty—Privity of Contract.

   The asserted general rule that it was necessary that there be privity of contract between plaintiff, the ultimate purchaser of a product manufactured by defendant and sold in the general course of trade, in order to hold defendant liable for breach of warranty is no longer the rule in this State (CL 1948, § 440.15).

   Dethmers, C. J., and Carr and Kelly, JJ., dissenting.

Appeal from St. Joseph; Andrews (Mark S.), J. Submitted January 8, 1958. (Docket No. 26, Calendar No. 47,106.) Decided June 12, 1958. Rehearing denied July 15, 1958.

Action by Helen W. Spence against Three Rivers Builders and Masonry Supply, Inc., a Michigan corporation, for damages arising from breach of express and implied warranties in respect to cinderblock building material. Judgment for defendant. Plaintiff appeals. Reversed and remanded.

*Carroll B. Jones,* for plaintiff.

*Lloyd R. Fayling* (*Howard & Howard,* of counsel on application for rehearing), for defendant.

VOELKER, J.   Plaintiff owned several cottages in a lakeside resort area, one of which was built from cinder blocks manufactured and sold for building purposes by the defendant.   A few months after the cottage was built many of the blocks started to crack, chip and, also, to pit and explode into a popping series of minute craters, followed by numerous flakings and powdery deposits and exuding unsightly travelling red and yellow stains known as "bleeding."   These strange phenomena occurred and were apparent both inside and outside the cottage, the blocks forming most of the interior wall surface. Some fruitless efforts were made by plaintiff to correct the situation, and she finally brought suit for damages against the manufacturer of the cinder blocks, grounding her claim upon breach of an express warranty and, also, upon breach of an implied warranty that the blocks were of merchantable quality under the statute hereafter cited.

The case was tried before the court without a jury. After hearing the testimony, pro and con, the court found that there was no express warranty and further found that while the blocks were indeed defective and constituted a breach of an implied warranty, it nevertheless held against plaintiff because of lack of privity of contract between plaintiff and the defendant manufacturer.   Plaintiff appeals here claiming that there was privity and that in any event she was entitled to maintain her action despite any lack of privity.

The question of privity arose in this case out of the fact that one Forrest Cook was to a disputed degree and capacity active on behalf of plaintiff in

the purchase of the defective blocks and in the building of the cottage. Both plaintiff and Cook testified below (Cook by deposition taken in Florida) that he was merely her agent and employee in ordering the blocks and erecting the cottage, and plaintiff now urges that therefore the court was wrong in finding and holding that there was in fact any lack of privity between her and defendant. Defendant for its part claims and offered testimony below tending to show that Cook was not such an employee or agent but was an independent building contractor who had himself purchased the blocks from defendant, thus insulating the latter from all liability to plaintiff. Defendant further urges that regardless of any privity or lack of it, under Michigan law there can be no recovery by plaintiff against it in these circumstances.

Plaintiff offered proofs below that the blocks were defective as indicated but that none of such defects were apparent to her or to Cook when they were delivered to her or erected into the cottage. She testified that on one side of the cottage alone she counted over 1,200 pitted imperfections in the blocks measuring from 1/4 of an inch to 3 inches, besides many smaller ones. There is no serious dispute but that the blocks were defective, as claimed, although the defendant does dispute the extent and consequences thereof. Proofs were also offered that the defendant failed adequately to test and examine the materials that went into the blocks or properly to inspect or test the completed blocks.

There was expert testimony offered on behalf of plaintiff by the head of the engineering department of a Midwest university that "before-and-after" inspection could and should have been made of the blocks and of the materials that went into them; that about 25% of the blocks were cracked internally; and that the deterioration was largely internal and

progressive in character. The trial court sustained a defense objection to an opinion by this expert as to the rapidity of the deterioration and how long it would take before the wall would be open because of the defects.

On cross-examination a defense witness and general manager of defendant company testified that defendant made a claim against its supply company (which in turn had furnished materials for cinder blocks made by it) for failing to furnish proper materials, and that thereafter his company (defendant here) stopped making cinder blocks.

As noted, the trial court found that the cinder blocks were defective and that this constituted a breach of an implied warranty that the goods were of merchantable quality, contrary to subsection 2 of section 15 of the uniform sales act (CL 1948, § 440.15 [Stat Ann § 19.255]) creating under certain circumstances an implied warranty that goods sold shall be of merchantable quality; and, also, that it nevertheless found against the plaintiff because of lack of privity. In other words the trial court applied to this case the so-called "general rule" that a manufacturer is not liable for negligence or otherwise to a remote vendee with whom it had no direct contractual relations.

There appears to be competent if conflicting testimony in this record to sustain the court's finding that Forrest Cook was not the agent or employee of the plaintiff in purchasing the blocks; that there was no express warranty made by defendant to plaintiff; and that the blocks were defective as claimed. We cannot say that the testimony preponderates the other way and we therefore think we are bound by those factual findings. By the same token we think we are likewise bound by the court's finding that the defects in the blocks constituted a breach of an implied warranty as to their fitness for the purposes

sold and used. Whether we are also to be bound by the court's holding that the plaintiff is barred from her action by lack of privity of contract with defendant will constitute the major concern of the balance of this opinion.

It is plain from the record and the opinion of the court below that it would doubtless have found for the plaintiff if it had not also found a fatal lack of privity. Under its view the fact that an intervening person (Cook) bought the blocks from defendant served completely to insulate the defendant from any liability to the plaintiff because of lack of contractual rapport.

Thus we find that our case is classic in its simplicity: plaintiff was near and yet so far; if she had only gone and bought the blocks herself or through an unquestioned agent or employee she would doubtless have recovered; but the court's finding on disputed testimony that Cook was, instead, a contractor barred her recovery for fatal lack of privity. Despite the oblique suggestion made here by defendant that plaintiff might have sued Cook or that Cook should have sued it, the fact is that plaintiff's dilemma is complete: she cannot now turn around and sue her man Cook; she is committed under oath on that one far past the point of no return (moreover he is in Florida); nor can Cook sue defendant; aside from his presumable lack of interest he is likewise nicely committed by his deposition below that he was merely plaintiff's agent and employee in purchasing the blocks. While all this is likewise no reason why she should prevail, it would appear rather plain that the plaintiff must lose both her appeal and any chance of ever being made whole unless we squarely hold that the court below was wrong in its law in holding that privity of contract was a necessary condition to recovery in these circumstances. We shall presently consider that issue, but before doing so shall de-

vote a paragraph to considering some other related issues.

Defendant suggests that, privity or no, the defects in the blocks do not impair the safeness or inhabitability of the cottage. We have noted that this was by testimony disputed by plaintiff, but even granting the correctness of defendant's position (and disregarding the fact that the widowed plaintiff here appears to make at least part of her living in that great American competitive sweepstakes: the care and housing of migrant tourists) we do not hesitate to hold (the issue of privity aside) that in these circumstances and in this day and age appearance as well as structural safety and durability is an important factor in determining the merchantable quality and fitness of these particular products as used in this case. Moreover there is expert testimony in this record that the deterioration of the blocks is internal and progressive and will at some undefined future time probably endanger the structure. As for defendant's contention that plaintiff nevertheless appears by the proofs to be renting her "bleeding" cottage at good rates, that would still be no defense on the merits (privity again aside), whatever factor it might properly be in the determination or possible mitigation of damages. We now proceed to face up to the big issue in this case: Should lack of privity bar this action as a matter of law?

As the court below correctly observed, there is little doubt that in the past our Court has for the most part devotedly followed the "general rule" and been reluctant to permit a third person "not in privity" to recover from a manufacturer on a theory of negligence or implied warranty. And it has correspondingly been reluctant to extend recovery—beyond what may loosely be termed "food" cases involving personal injuries—to other defective products, regardless of whether they involved personal injuries

or injuries to property.  (*Smolenski* v. *Libby, Mc-Neill & Libby, *280 Mich 329.)

In fact, in the past in these situations we have not only tended to severely limit the factual area of recovery but we have shown an equally ready disposition to adopt and embrace the whole dreary legal apparatus and rhetoric so long employed in these situations to narrow or prevent any recovery at all.  Some of these open sesame phrases are: whether there was privity or the lack of it; whether the defect was latent or patent; whether or not the offending product was sold in the original package; whether a vague requirement of a "higher degree of care" might sometimes alter the application of "the rule;" or whether the defective product did or did not contain an "inherently or imminently dangerous" article or substance harmful to humans. We do not exhaust the list.  There are other equally impressive and ominous catch-phrases, and awesome have been some of the semantic bogs negotiated by ours and other appellate courts when in particularly harsh cases they have attempted by such artificial "exceptions" to get around the barrier imposed by their own equally artificial "general rule" of nonliability.

Sometimes even we have been inconstant to "the rule;" occasionally even we have faltered in our reverence for the hallowed doctrine of *Smolenski* and the long line of related cases.  Thus in *Bosch* v. *Damm,* 296 Mich 522, we so far strayed from the paths of virtue as to approve recovery below in an action of negligence by a remote vendee plaintiff householder and his fire insurance company against the manufacturer of a defective refrigerator which caused a fire.  We quickly managed, however, to atone for our brief flirtation with modern doctrine and temper our heretical departure from the past by vacating the judgment on other grounds.  Thus,

with notably few exceptions (which may be dismissed as occasional flashes of legal heat lightning rather than any genuine attempt to clear the troubled atmosphere) we have in this area pretty much continued to embrace and repeat most of the old legal formulas right down to the present day. This is not to single out our own Court for undue censure; in earlier days, to paraphrase the title of the old song, "everybody was doing it;" this writer would doubtless at one time have done it himself; but the question presently before the Court is whether we are going to continue to be hobbled by such an obsolete rule and its swarming progeny of exceptions.

Thus another brave if fleeting departure from the norm occurred in *Ebers* v. *General Chemical Co.,* 310 Mich 261 (17 NCCA NS 660), where our decision approved the notion of recovery by a remote vendee against the manufacturer of a defective insecticide for peach trees where the proofs showed that the manufacturer had not adequately tested his product on Michigan trees. It will be observed that this was not a food case nor was recovery restricted to injuries to the person. This was a hopeful stride forward, but there again we showed an unfortunate disposition to bow to the notion of privity (while circumventing it); there again we felt compelled to repeat many of the old mystical platitudes and ritualistic phrases that have for so long cluttered our decisions in this area. That *Ebers,* however right the result, did not clear away the confusion may perhaps best be shown by the trial result in this case, some dozen-odd years later, when once again litigants are obliged to make the expensive trek to Lansing because of the unpredictable imposition of the old rule.

Saddled with such a doctrine and its hair-splitting exceptions, it is not surprising that while a few of our decisions have afforded passing illusory comfort

to all, certainty has been afforded to none. The reason is simple: A court lacking a clear and understandable rule of its own can scarcely be expected to impart it to others. Legal confusion has inevitably resulted. Aggrieved plaintiffs have scarcely known whether to sue in deceit or fraud or for negligence or breach of warranty—or indeed whether it was worthwhile to sue at all.

Our Court perhaps uttered the towering legal understatement of the year (1924) when in *Hertzler* v. *Manshum,* 228 Mich 416 (a poison flour case), we observed that cases in this category "appear hopelessly at variance." We there reverently discussed the accepted theory of claimed nonliability (our old friend, lack of privity) and then proceeded to hold that food cases were an exception (pp 421, 422) "and there only by reason of a want of a high degree of care." While that case is not alone, it is typical of the curious things courts can bring themselves to do and say when they try vainly to wed the outmoded thinking and legal cliches of the past to the pressing realities of modern life.

Consider what was just said in *Hertzler.* "Higher care" was there our way around privity. This is a beguiling notion, but we find ourselves unable to discover why the imposition by judicial fiat of a mystical higher degree of care should magically dissolve the need for privity, as just asserted in *Hertzler.* Why should this be so? Either lack of privity should always be a defense in these cases, or it never should be. The basically contractual notion of privity in this context has largely to do with the right of a party to *bring* his action against the person he seeks to hold, regardless of injury suffered. The tort idea of care or the lack of it has nothing whatever to do with *that* subject, though it may indeed have a lot to do with recovery.

We can also find no reason in logic or sound law why recovery in these situations should be confined to injuries to persons and not to property, or allowed in food and related cases and denied in all others. Nor, least of all, can we divine why our Court should ever have felt compelled, in the generally narrow circumstances where it has allowed any recovery at all, to split up the duty of care into esoteric degrees of high, low or medium, as though care were a chancy and fluctuating barometer of conduct which rose or fell depending on the state of our livers.

Care does not increase or diminish by calling it names. We think the abstract concept of reasonable care is in itself quite difficult enough to grapple with and apply in our law without our courts gratuitously conferring honorary degrees upon it. There is only *one* degree of care in the law, and that is the standard of care which may reasonably be required or expected under all the circumstances of a given situation, whether arising in the manufacture of canned beans or cinder blocks. Such confusion of care with privity in these cases is not only bad in itself but, worse yet, it inevitably tends to maim and muddy up the larger field of law in both contracts and torts.

We observe—and the defendant seeks to make much of the fact—that the declaration in the present action is not in terms grounded upon negligence of the defendant, although certain of the proofs, as already indicated, tend rather clearly to show its negligence. We also find that in Michigan—whatever the rule may be elsewhere—there is authority for treating actions of this kind based upon implied warranty by the manufacturer as though they were explicitly grounded upon negligence.

Thus we said in *Hertzler* v. *Manshum,* 228 Mich 416, 423 (although we limited our remarks to foodstuffs):

"The implied warranty, so-called, reaching from the manufacturer of foodstuffs to the ultimate purchaser for immediate consumption is in the nature of a representation that the highest degree of care has been exercised and a breach of such duty inflicting personal injury is a wrong in the nature of a tort and not a mere breach of contract to be counted on in assumpsit. Except in name and to establish privity between the manufacturer and the ultimate consumer it is the same thing as negligence. *Plaintiff's case, in its last analysis, is bottomed on negligence.* (Italics added.)"

Again in *Ebers* v. *General Chemical Co.,* 310 Mich 261, 275, we stated (in countenancing recovery by a remote vendee against the manufacturer of a defective insecticide for peach trees), "Although plaintiff claims under the theory of an implied warranty, the real question is whether or not defendant was negligent." We then proceeded to quote approvingly the language just quoted from *Hertzler.*

Whether this notion only adds to the confusion or is any sounder legal reasoning than some of the other things we have said in the past in this area may be open to some dispute, but if we have thus solemnly told litigants and their counsel that suing for breach of an implied warranty is in effect tantamount to suing for negligence (one might think, for one thing, that the burden of proof might in some cases be more onerous on the plaintiff in the latter situation) we lack the heart to banish this plaintiff in this case because she trustingly took us at our word. We suggest in the future, however, that, where warranted by the circumstances, such declarations should sound explicitly in negligence as well as for claimed breach of warranty.

In addition we observe that the modern trend in other jurisdictions is to permit recovery by remote vendees against the manufacturer whether the action sounds in negligence or on an implied warranty or both. Thus at page 53 in the 1957 cumulative supplement to 46 Am Jur, Sales, § 825, p 947, the supplemental text reads as follows: "To recover damages for an injury from goods purchased, a plaintiff may rely upon negligence alone or upon an implied warranty, or may plead negligence and recover on the implied warranty, or, upon pleading both, may waive the tort and recover on the implied warranty."

A succinct but thorough thumbnail sketch of the history and development of this doctrine of liability of a manufacturer to a remote vendee appears in the 1957 supplement to 46 Am Jur, Sales, § 812, at pp 47–49, which in turn appears to be based to a large extent on a similar annotation in 164 ALR 569. The supplementary text traces how the doctrine of non-liability crept into our law from a casual dictum in an English case decided in 1842 (which, to add to the delightful irony, did not even involve a manufacturer), and how many American courts quickly fell upon this ancient dictum and blew it up into a "general rule" to relieve manufacturers of all liability; of how our courts then gradually grafted upon it a bizarre cluster of "exceptions," some of which we have already noted, which wondrously grew and grew until, in all truth—much like the boa constrictor swallowing itself—the exceptions devoured the rule; and how the English in due course sensibly scuttled their earlier dependence on this old dictum while many of our American courts remained tenacious in their devotion to the old "rule"—many, indeed, even after Justice Cardozo's historic decision in *MacPherson* v. *Buick Motor Company*, 217

NY 382 (111 NE 1050, LRA1916F, 696, Ann Cas 1916C, 440).

The text of Am Jur tacitly suggests the uncharitable notion that possibly the increased popularity of the doctrine of lack of privity as a defense in these cases was in some jurisdictions motivated as an inspired answer to the disturbing challenge of the *MacPherson Case* itself. Contemplating such a state of affairs one cannot resist borrowing from Justice BLACK's recent opinion in *City of Dearborn* v. *Bacila,* 353 Mich 99, 112, where he quotes from Justice Holmes (Collected Legal Papers, p 187) as follows:

" 'It is revolting to have no better reason for a rule of law than that so it was laid down in the time of Henry IV. It is still more revolting if the grounds upon which it was laid down have vanished long since, and the rule simply persists from blind imitation of the past.' "

As noted, there is a leading annotation on this whole subject in 164 ALR 569, cited throughout the reference already made to Am Jur, but we shall here content ourselves with giving but a few extracts from p 48 in the cited Am Jur supplement, which we quote without further ado:

"In other words, under the modern law, where the manufacturer is held not liable for negligence, he is excused from liability on doctrines of the law of torts; lack of foreseeability, want of actual negligence, or the fact that the injury was not proximately caused by his conduct, is the true basis of nonliability. The manufacturer is not excused under the modern law merely because there happened to be a lack of any privity of contract between him and the injured person; such an artificial and anachronistic basis for relief from tort liability can no longer, in the final analysis, be asserted.

"Under the modern doctrine there is little doubt

that a person who has had no direct contractual relations with a manufacturer may nevertheless recover from such manufacturer for damages to property caused by the negligence of the manufacturer in the same manner that such a remote vendee or other third person can recover for personal injuries."

And again:

"The use of such phrases as 'inherently dangerous,' 'imminently dangerous,' 'intrinsically dangerous,' et cetera, in attempting to fix the bounds of a manufacturer's liability for negligence, has led to considerable confusion in the authorities, and the retention of the 'general rule' and the 'exceptions' seems to have enlarged, and not to have diminished, the problems of the courts. The simplest way out of the difficulty would be to take the route charted by the Massachusetts court in *Carter* v. *Yardley & Co.* [319 Mass 92 (64 NE2d 693, 164 ALR 559)] and abandon all attempts to preserve a 'general rule' of nonliability which has been eaten away by exceptions. If the suit is in negligence, based on principles of tort, liability or nonliability in a particular case can be ascertained by applications of ordinary principles of tort law, without regard to notions about 'privity of contract.' Even if the old 'general rule' is repudiated, and a manufacturer's liability or nonliability for negligence is predicated purely and simply on the law of torts, dispelling any notions about necessity of privity of contract, it is obvious that in a great many instances the manufacturer will not be held to be liable. But if he is excused from liability, he will be excused because there is no case against him under the law of negligence—a result which is fair, logical, and compatible with modern social and economic relationships."

The *Yardley Case,* cited above, contains an excellent history of the "general rule" and is a leading modern case in this field. It also contains a citation

of many texts and law review articles on the subject. As noted, the full text of the case appears at 164 ALR 559. The long opinion in the *Yardley Case* concludes very simply:

"The time has come for us to recognize that that asserted general rule no longer exists. In principle it was unsound. It tended to produce unjust results. It has been abandoned by the great weight of authority elsewhere. We now abandon it in this Commonwealth."

To these sentiments we utter a fervent amen.

In this case it appears that there was a lack of due care. Merely to describe what happened to the blocks should be showing enough on that score—but here the defendant admitted it inspected or tested neither the raw materials nor the finished blocks. Granting the learned trial court's understandable bewilderment under our past decisions, we think it should have permitted recovery either on a theory of negligence or implied warranty and should also have proceeded to take such further proofs on plaintiff's damages as may have been necessary. Therefore the judgment for defendant below is set aside and the cause remanded for further proceedings consistent with this opinion, including the taking of such further proofs as may be necessary, with costs to appellant.

Smith, Black, Edwards, and Kavanagh, JJ., concurred with Voelker, J.

Kelly, J. (*dissenting*). I am writing a dissent to Justice Voelker's opinion in this case (hereinafter referred to as "the opinion"). Justice Voelker writes for reversal on the grounds that the trial court should have permitted recovery either on a theory of negligence or implied warranty.

The opinion states that "the present action is not in terms grounded upon negligence of the defendant," but that we find in Michigan "authority for treating actions of this kind based upon implied warranty by the manufacturer as though they were explicitly grounded upon negligence," and in support of such statement cites *Hertzler* v. *Manshum,* 228 Mich 416; *Ebers* v. *General Chemical Co.,* 310 Mich 261 (17 NCCA NS 660); and *Bosch* v. *Damm,* 296 Mich 522.

In all 3 of the cases cited plaintiffs claimed in their pleadings that defendants were negligent, and no case is cited in the opinion sustaining the claim that Michigan courts or counsel for litigants have been misled into a belief that the plea of implied warranty is and should be treated as though it were "explicitly grounded upon negligence." It is difficult to understand why we should in the present case accept the opinion and hold that the plea of breach of warranty contained the plea of negligence, and, in the same opinion, caution litigants and their counsel that in the future "such declarations should sound explicitly in negligence as well as for claimed breach of warranty."

Plaintiff did not plead or base her cause of action on negligence, but rather upon express or implied warranty. The trial court did not err in failing to find for plaintiff because of defendant's negligence.

The opinion states that the major question is whether "plaintiff is barred from her action by lack of privity;" "that the plaintiff must lose both her appeal and any chance of ever being made whole unless we squarely hold that the court below was wrong in its law in holding that privity of contract was a necessary condition to recovery in these circumstances;" that "the big issue" in this case is: "Should lack of privity bar this action as a matter of law."

The lower court found that plaintiff did not purchase the blocks from defendant; that said blocks were purchased by one who was not the agent or employee of the plaintiff. The opinion states that we are bound by the lower court's finding in this regard as "we cannot say that the testimony preponderates the other way."

The lower court held that the general rule is "that privity of contract is required in an action for breach of either express or implied warranty and that there is no privity between the original seller and a subsequent purchaser who is in no way a party to the original sale."

The opinion does not challenge the fact that the court properly applied the law of this State as it has existed for many years in the past. The opinion fails to cite one case from the Supreme Court of this State, or any other State, where a judgment on an express or implied warranty was sustained without privity of contract. The opinion calls to attention *Carter* v. *Yardley & Co., Ltd.,* 319 Mass 92 (64 NE2d 693, 164 ALR 559) and states that this case "contains an excellent history of the 'general rule' and is a leading modern case in this field."

To establish the fact that in the *Yardley Case* the Massachusetts court held that privity of contract was necessary to sustain an action upon an express or implied warranty, we quote from said opinion as follows (p 96):

"The main question in this case is whether the plaintiff is to be denied relief in this action of tort for negligence merely because she had no contractual relation to or privity of contract with the defendant.

"Of course in an action of contract, such as an action upon an express or implied warranty, want of privity of contract would be a defense. *Colby* v. *First National Stores, Inc.,* 307 Mass 252 (29 NE2d

920); *Pearl* v. *Wm. Filene's Sons Co.*, 317 Mass 529, 530, 531 (58 NE2d 825); *Hampson* v. *Larkin*, 318 Mass 716 (63 NE2d 888); *Pearlman* v. *Garrod Shoe Co., Inc.*, 276 NY 172 (11 NE2d 718); *Chanin* v. *Chevrolet Motor Co.*, 89 F2d 889 (111 ALR 1235); *Rachlin* v. *Libby-Owens-Ford Glass Co.*, 96 F2d 597."

The principle of law requiring privity of contract to sustain actions for express or implied warranty is not an obsolete principle of law unique to Michigan, as is inferred in the opinion. A recent decision of the supreme court of Ohio (decided April, 1953), *Wood* v. *General Electric Co.*, 159 Ohio St 273, 279 (112 NE2d 8), states:

"Although a subpurchaser of an inherently dangerous article may recover from its manufacturer for negligence, in the making and furnishing of the article, causing harm to the subpurchaser or his property from a latent defect therein, no action may be maintained against such manufacturer by such subpurchaser for such harm, based upon implied warranty of fitness of the article so purchased. 46 Am Jur, Sales, §§ 810, 812, pp 934, 937; 2 Restatement of the Law of Torts, §§ 395 and 497; *Birmingham-Chero-Cola Bottling Co.* v. *Clark*, 205 Ala 678 (89 So 64, 17 ALR 667); *Pelletier* v. *Dupont*, 124 Me 269 (128 A 186, 39 ALR 972); *Kentucky Independent Oil Co.* v. *Schnitzler, Admr.*, 208 Ky 507 (271 SW 570, 39 ALR 979); *Chysky* v. *Drake Brothers Co., Inc.*, 235 NY 468 (139 NE 576, 27 ALR 1533); *Flies* v. *Fox Bros. Buick Co.*, 196 Wis 196 (218 NW 855, 60 ALR 357); annotations, 63 ALR 340, 349, 88 ALR 527, 534, 142 ALR 1490, 1494, and 164 ALR 569. Here, there was no such privity and hence no implied warranty upon the part of General Electric and no valid issue on that subject."

In the New York case of *Chysky* v. *Drake Brothers Co., Inc.*, 235 NY 468 (139 NE 576, 27 ALR 1533), which was cited in the Ohio decision above, we

find the following statement by the New York court (p 472):

"The general rule is that a manufacturer or seller of food, or other articles of personal property, is not liable to third persons, under an implied warranty, who have no contractual relations with him. The reason for this rule is that privity of contract does not exist between the seller and such third persons, and unless there be privity of contract, there can be no implied warranty."

Privity of contract is required in an action for breach of either express or implied warranty. No such proof was introduced in this case. The trial court did not err in finding that in the absence of such proof the plaintiff could not recover. Judgment should be affirmed.

DETHMERS, C. J., and CARR, J., concurred with KELLY, J.